UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN GRAHAM, on behalf of himself and all others similarly situated and as a representative for the State of California,<br><br>Plaintiff,<br><br>v.<br><br>STRYKER CORPORATION; STRYKER EMPLOYMENT COMPANY, LLC; STRYKER MEDICAL AND SURGICAL CORPORATION; and DOES 1 through 50, inclusive,<br><br>Defendants. | No. 2:24-cv-1411-DJC-JDP<br><br>ORDER DENYING MOTION TO REMAND |

Plaintiff seeks remand of this case to state court arguing that there is not complete diversity and that the minimum amount in controversy has not been met. The Court disagrees, finding that there is complete diversity of citizenship and that the amount in controversy exceeds $75,000. Accordingly, for the reasons set forth below, the Court will DENY remand.

////

////

1

## BACKGROUND

Plaintiff Jonathan Graham is a former employee of Defendants Stryker Corporation, Stryker Medical and Surgical Equipment Corporation, and Stryker Employment Company, LLC ("Stryker Employment"). (Removal Not., Ex. A ("Compl.") (ECF No. 1-1) ¶ 8.) Plaintiff, who worked from home as an account manager, contacted customers, traveled to customers' locations to service those customers and sell Defendant's equipment/products, attended meetings, and completed administrative requirements related to customer purchases of Defendants' services/products. (*Id.*) Plaintiff was paid on a commission basis. (*Id.* ¶ 9.)

In order to perform these job duties, Defendants required Plaintiff to use his personal cell phone, vehicle, and electronic equipment to contact customers and sell equipment. (*Id.* ¶¶ 8, 11.) However, instead of reimbursing Plaintiff for these and other work-related expenses, "Defendants devised a system whereby account managers not only front[ed] the work-related costs incurred, but in actuality [paid] for their own expenses." (*Id.* ¶ 11.) Initially, Defendants withheld 1% from each account managers' commission wages "and, when account managers such as Plaintiff submitted expense reimbursement requests, Defendants deducted the expense reimbursement amounts from the 1% deducted from the account managers' commission wages and paid this amount back to the account managers." (*Id.* ¶ 12.) Hence, Plaintiff alleges "Defendants never reimbursed account managers for any work-related expenses incurred." (*Id.*) "Rather, account managers such as Plaintiff paid for all of the work-related expenses they incurred out of their own commission wages." (*Id.*)

"Under this system, if account managers did not submit sufficient reimbursement requests to total the 1% withheld from account managers' commission wages," then Defendants would pay out any amount not used for reimbursements to the account managers on a quarterly basis, a process called a "true-up." (*Id.* ¶¶ 14–15.) However, Plaintiff alleges this true-up "did not always occur on the schedule that

Defendants promised." (*Id.* ¶ 15.) Further, Plaintiff alleges this true-up was referred to as a "quarterly expense management bonus," but was not a bonus at all as it was merely the remaining commission wages from the 1% withheld. (*Id.*)

At some point, Defendants modified their system to deduct $2,000 a month from each account managers' commissions instead of 1%. (*Id.* ¶ 16.) Otherwise, the system worked the same, as Defendants continued to reimburse account managers for their work expenses from the amount withheld. (*Id.*) Defendants also continued to state they would conduct a quarterly true-up, and, if the reimbursements were less than the amount withheld, that they would pay the remaining commission to account managers as a "quarterly expense management bonus." (*Id.*) However, Plaintiff alleges Defendants have failed to conduct a true-up since mid-2023. (*Id.*)

As a result of this reimbursement system, Plaintiff alleges that Defendants have "failed to pay the account managers for all earned wages[,]" improperly taken deductions, failed to pay "account managers all of their commission wages when they are due[,]" "failed to provide account managers with a signed commission plan setting forth how it calculated commissions owed[,]" and "failed to furnish accurate wage statements." (*Id.* ¶¶ 17–21.) In addition, Defendants "fail[ed] to actually furnish the wage statements to its employees[,]" as "Defendants only make the wage statements available on-line." (*Id.* ¶ 21.)

Plaintiff brought this putative class action for (1) failure to pay wages when due under California Labor Code sections 201–204, (2) wage statement violations under Labor Code section 226, (3) reimbursement violations under Labor Code section 2802, (4) unauthorized deductions under Labor Code section 221, (5) unfair competition under California Business & Professions Code section 17200, *et seq.*, and (6) Private Attorneys General Act ("PAGA") penalties under Labor Code section 2698, *et seq.*, on April 11, 2024, in Sacramento County Superior Court. (*Id.* ¶¶ 30–63.) Defendants removed the matter to federal court based on diversity jurisdiction on May 17, 2024. (*See* Removal Not. (ECF No. 1).) Plaintiff moved to remand on June 13,

3

2024.  (Mot. Remand (ECF No. 10).)  The matter is fully briefed and was submitted without oral argument pursuant to Local Rule 230(g).  (ECF No. 16.)

## LEGAL STANDARD

A case may be removed to federal court if that court would have jurisdiction over the matter.  See 28 U.S.C. § 1441; *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009).  Subject-matter jurisdiction exists in civil cases involving a federal question or diversity of citizenship.  28 U.S.C. §§ 1331, 1332.  Diversity jurisdiction exists for all suits, including class-action suits, where "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," and is between parties with diverse citizenship.  28 U.S.C. § 1332(a).

"A motion to remand is the proper procedure for challenging removal."  *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) (citing 28 U.S.C. § 1447(c)).  Removal statutes are "strictly construed, and any doubt about the right of removal requires resolution in favor of remand."  *Id.* (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)).  This "'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper."  *Gaus*, 980 F.2d at 566.

The Ninth Circuit has explained that a plaintiff's motion to remand is "the functional equivalent of a defendant's motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)."  *Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th Cir. 2014).  As such, a motion to remand may be based on either a facial attack or a factual attack on the defendant's jurisdictional allegations.  *See id.*  In a facial attack, the challenger takes the allegations in the complaint as true but challenges whether those allegations are sufficient to invoke jurisdiction.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction.  *Id.*  A factual attack typically introduces evidence outside the pleadings, and the party asserting federal jurisdiction must then "support [their]

4

1  jurisdictional allegations with 'competent proof,' . . . under the same evidentiary
2  standard that governs in the summary judgment context," and must establish federal
3  jurisdiction by a preponderance of the evidence.  *Leite*, 749 F.3d at 1121 (citations
4  omitted).  "[I]f the existence of jurisdiction turns on disputed factual issues, the district
5  court may resolve those factual disputes itself." *Id.* (citations omitted).

## DISCUSSION

### I.  Plaintiff's Evidentiary Objections

Plaintiff mounts several objections to the declarations relied on by Defendants in their briefings to support their allegations that the Parties are diverse and the amount in controversy is met.  First, Plaintiff objects to the declaration of Aliyya Rizley, Senior Director at Workplace Practices Americas, attached to Defendants' Notice of Removal on the basis that it "is speculative and self-serving, fails to establish that Ms. Rizley has personal knowledge of the matters to which she attests, and contains inadmissible hearsay." (Mot. Remand at 13–14; *see also* ECF No. 10-1 (objecting to Rizley Decl. (ECF No. 1-4).)  In response, Defendants provide two new declarations in support of removal: (1) the declaration of defense counsel Michele J. Beilke ("Beilke Declaration"); and (2) the declaration of Michael Puca, Vice President at Workplace Practices America ("Puca Declaration").  (*See* Puca Decl. (ECF No. 12-4); Beilke Decl. (ECF No. 12-6).)  Plaintiff objects to the Puca Declaration as relying on "inadmissible hearsay" (*see* Reply (ECF No. 14) at 13), and to the Puca and Beilke Declarations based on a lack of foundation, lack of personal knowledge, and/or failing to provide the best evidence (*see generally* ECF No. 14-1).

The Court finds these objections lack merit.  Plaintiff's hearsay objections to the Puca Declaration are overruled because the factual information underlying the hearsay could be admitted at trial.  *See Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1004 (9th Cir. 2002).  Similarly, Plaintiff's lack of foundation objections are overruled because such problems are nonfatal if "the substance could conceivably be made admissible at trial." *Portnoy v. City of Davis*, 663 F. Supp. 2d 949, 953 (E.D. Cal. 2009)

5

(quotation marks omitted). Finally, Plaintiff's objections based on the best evidence rule are overruled for the same reason,[1] as all of the documentary and factual material produced in the declarations could be introduced at trial by Defendants' Person Most Knowledgeable and custodians of record. (*See* ECF No. 12-3 at 2 and n.1 (explaining that Workplace Practices America is not a separate company from Defendants);) *see also Hughes v. United States*, 953 F.2d 531, 543 (9th Cir. 1992) (holding an affidavit could be considered on summary judgment despite hearsay and best evidence rule objections because the facts underlying the affidavit were of the type that would be admissible evidence even though the affidavit itself might not be admissible).

Plaintiff also argues that the Puca Declaration lacks personal knowledge. (*See* ECF No. 14-1 at 2–12.) However, the Puca Declaration states that it is based on personal knowledge (*see* Puca Decl. ¶ 1), and on a "review of the[ ] corporate records"[2] (*id*. ¶ 2; *see id*. ¶ 6). That is sufficient at this stage because Defendants have clarified that Workplace Practices America, where Mr. Puca works, is not a separate company from Defendants. (ECF No. 12-3 at 2 and n.1.)

Therefore, Plaintiff's evidentiary objections are overruled.

## II.  Defendants Have Established Complete Diversity

The party seeking to invoke a district court's diversity jurisdiction bears the burden of both pleading and proving that jurisdiction. *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 613–14 (9th Cir. 2016). For the purposes of diversity, courts look to a

---

[1] To the extent Plaintiff objects to the Puca Declaration because it confirms any negatives, i.e., that "there is no legal entity known as 'Stryker Medical and Surgical Equipment Corporation[,]'" that "Stryker Corporation's most recent Form 10-K does not list 'Stryker Medical and Surgical Equipment Corporation' as a subsidiary[,]"and that "Stryker Employment did not make any additional payments to Plaintiff between the last day of his employment and 30 days thereafter[,]" (Puca Decl. ¶¶ 6, 10.e), that evidence is *not* subject to the best evidence rule. *See* Fed. R. Evid. 1002, Advisory Committee Notes 1972 Proposed Notes ("Nor does the rule apply to testimony that books or records have been examined and found not to contain any reference to a designated matter."). Thus, those objections are overruled.

[2] Mr. Puca explains that he is employed by Stryker Employment as Vice President at Workplace Practices and that, in that role, he is familiar with Defendants' corporate structure and has access to Defendants' corporate and personnel records. (Puca Decl. ¶¶ 1–2, 7.)

party's citizenship at the time the lawsuit was filed. *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986). A person is a citizen of the state in which they are domiciled, and they are domiciled where they reside and intend to remain indefinitely, or to where they intend to return. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). A corporation is a citizen of every state and foreign state where it is incorporated and has a principal place of business or "nerve center." 28 U.S.C. § 1332(c)(1); *Hertz v. Friend*, 559 U.S. 77, 92–93 (2010). The never center is normally "the place where the corporation maintains its headquarters – provided that the headquarters is the actual center of direction, control and coordination . . . and not simply an office where the corporation holds its board meetings . . . ." *Hertz*, 559 U.S. at 93. A limited liability company or partnership is a citizen of all of the states of which its partners are citizens. *See Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).

Here, the Court concludes that Defendants have established by a preponderance of the evidence that there is complete diversity of citizenship. Plaintiff alleges he is a citizen of California. (Compl. ¶ 24.) The sole Defendants are Stryker Corporation and Stryker Employment.[3] Plaintiff does not allege the residency of the Defendants in the Complaint. Defendants, however, allege that Stryker Corporation is a Michigan corporation with its principal place of business in Michigan. (*See* Removal Not. ¶ 9.) Defendants also allege that Stryker Employment is an LLC with only one member, Howmedica Osteonics Corp., a New Jersey corporation with its principal place of business there. (*See id.* ¶ 10.) As evidence of these assertions, Defendants offer the Puca Declaration, as well as corporate Statements of Information from the California Secretary of State for Stryker Corporation and Stryker Employment. (*See* Opp'n (ECF No. 12) at 5–6; Req. Judicial Not., Exs. 1–2 (ECF No. 12-2); Puca Decl. ¶¶ 2–5.[4]) These materials establish by a preponderance of the evidence that Stryker

---

[3] As the Puca Declaration establishes, "there is no legal entity known as 'Stryker Medical and Surgical Equipment Corporation.'" (Puca Decl. ¶ 6.)

[4] Defendants asked that the Court take judicial notice of Exhibits 1 and 2, containing the Statements of Information for Stryker Corporation and Howmedica Osteonics Corp. (*See* Req. Judicial Not. at 2.) The

Corporation is a citizen of Michigan, that Stryker Employment is a citizen of New Jersey, and that neither is a citizen of California.

Plaintiff complains that "there are other unmentioned executive leaders, who may not be based outside of Michigan and who may be primarily responsible for the direction, control, and coordination of [Stryker Corporation], in which event its nerve center would be where they are located, not in Michigan." (Reply at 4.) But Defendants' submitted materials indicate that many of these functions and officers are in Michigan, which is enough at this stage to establish Michigan as Stryker Corporation's "nerve center." *See, e.g., Breitman v. May Co. Cal.*, 37 F.3d 562, 564 (9th Cir. 1994) ("May Company's corporate headquarters are located in Missouri, and its executive and administrative functions are performed in that state. Therefore, the district court properly found that May Company was a citizen of Missouri . . . ."). Therefore, Stryker Corporation is a citizen of Michigan.

Because Defendants have established that Plaintiff is a citizen of California, Stryker Corporation is a citizen of Michigan, and Stryker Employment is a citizen of New Jersey, Defendants have established complete diversity of citizenship at this stage. *See Industrial Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990).

### III.  Defendants Have Established the Amount in Controversy

Where it is not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) (*per curiam*). Here, the Complaint alleges on information and belief that the amount in controversy "do[es] not exceed $74,999.99." (Compl. ¶ 5.) Defendants' Removal Notice challenges this

---

Court takes judicial notice of these exhibits as public documents. *See, e.g.*, *Fair Hous. Council of Riverside Cnty., Inc. v. Grp. XIII Properties LP*, No. EDCV 21-941 JGB (KKx), 2023 WL 4680764, at *4–5 (C.D. Cal. Apr. 27, 2023). However, the Court only takes judicial notice of the fact the documents exist, their authenticity, any undisputed facts, and any facts capable of easily being verified by the documents.

assertion, alleging that the amount in controversy is at least "$108,063." (Removal Not. ¶ 24.) To reach this total, Defendants calculate the amount in controversy as follows: $30,600 for the first cause of action, failing to pay wages at termination under Labor Code section 203; $1,850 for the second cause of action, inaccurate wage statements under Labor Code section 226; and $54,000 for the third cause of action, failing to reimburse business expenses under Labor Code section 2802. (*See* Removal Not. ¶¶ 16–21 and nn.1–3.) Defendants also calculate attorney's fees based on a 25% benchmark rate at $21,612.50. (*See id.* ¶¶ 23–24 and n.5.)

Defendants amend these calculations in their Opposition, calculating $30,619.20 for the first cause of action; $1,950 for the second cause of action; and $63,360.15 for the third cause of action. (*See* Opp'n at 12–14.) Defendants also supplement the amount in controversy by calculating an additional $7,000 for the first cause of action, failing to pay wages during employment under Labor Code section 204, and $7,000 for the fourth cause of action, unauthorized deductions under Labor Code section 221.[5] (*See id.* at 11, 15.) Defendants calculate attorney's fees at $27,482.34 based on a 25% contingency-fee benchmark, or $75,000 based on a lodestar calculation assuming that Plaintiff's counsel would be paid at a rate of at least $750 per hour for at least 100 hours based on prior cases counsel litigated and other wage and hour cases. (*See id.* at 15–17.) Accordingly, Defendants contend the

---

[5] Plaintiff objects to the addition of these new damages in Defendants' Opposition. (*See* Reply at 9–10.) However, Plaintiff concedes that he brings a factual attack against Defendants' jurisdictional allegations. (*See* Reply at 5–9.) Because Plaintiff brings a factual attack, the Court may consider the new arguments raised in Defendants' Opposition as a constructive amendment of the Removal Notice. *See Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 n.1 (9th Cir. 2002) (citing *Willingham v. Morgan*, 395 U.S. 402, 407 n.3 (1969)). The Court can permit such amendment because Defendants' new arguments and allegations pertain to its theory of jurisdiction first raised in the Removal Notice, so the relevant allegations in the Removal Notice are "defective in form but not so lacking in substance as to prevent their amendment." *Barrow Dev. Co. v. Fulton Ins. Co.*, 418 F.2d 316, 318 (9th Cir. 1969); *see, e.g.*, *Wang v. Asset Acceptance, LLC*, 680 F. Supp. 2d 1122, 1125 (N.D. Cal. 2010). However, as demonstrated below, the Court need not consider these new damages in order to reach the amount in controversy requirement for diversity jurisdiction. Thus, the Court declines to address Plaintiff's objections that Defendants' calculations for these new damages are incorrect. (*See* Reply at 10–11.)

amount in controversy is satisfied as, assuming $75,000 in attorney's fees, the total amount in controversy would be $184,929.35. (*Id.* at 17.)

Plaintiff disputes these calculations for three reasons.  First, Plaintiff challenges Defendants' method of calculating waiting time penalties for Plaintiff's first claim for failure to pay wages at termination "based on an average hourly rate of pay derived from the commissions he earned during the last three months of his employment" and the assumption that he "uniformly worked 40 hours per week and eight hours per day," arguing this method is unreasonable and unsupported by the Complaint.  (Reply at 7, 11.)  Second, Plaintiff challenges Defendants' assumption of a 100% violation rate in calculating the damages recoverable on his first claim for failure to timely pay wages at termination, second claim for failure to furnish accurate wage statements, and third claim for unreimbursed business expenses. (*Id.* at 8, 13.)  Finally, Plaintiff challenges Defendants' calculation of $63,360.15 for his third claim of unreimbursed business expenses on the grounds that it is unsupported by admissible proof. (*Id.*)

For the reasons set forth below, the Court finds Plaintiff's challenges to Defendants' calculations lack merit.  Thus, Defendants have satisfied the amount in controversy requirement.

**A.    The Waiting Time Penalties for Plaintiff's First Cause of Action are Reasonable and Supported by the Record**

Under California Labor Code section 203, an employer who willfully fails to timely pay all wages due at termination is subject to a statutory penalty of up to 30 days' wages.  Here, Plaintiff alleges he was not paid all commission wages owed at the time of his termination. (Compl. ¶¶ 10, 19.)  During Plaintiff's last three months of employment, Plaintiff earned $66,343.78 in commission wages, equaling a daily pay rate of $1,020.67 assuming Plaintiff worked 8 hours per day and 40 hours a week. (Opp'n at 13 n.9.)  Thus, Defendants calculated Plaintiff's claim for waiting penalties at $30,619.20, or $1,020.67 per day x 30 days.  (*Id.*)

////

Plaintiff argues the Court should reject Defendants' method of calculating the waiting time penalties "based on the aggregate commissions plaintiff earned in the final three-month period of his employment" because this is a hypothetical method for calculating wages suggested by the State of California's Department of Industrial Relations ("DIR"). (*See* Reply at 11.) Plaintiff's sole critique is that this method of calculation is "not remotely binding on this Court" because DIR's interpretation of a statute is not binding. (*Id.* (citing *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1105 n.7 (2007)).) The Court does not follow Plaintiff's logic. Even if DIR's method is not binding, that does not mean the method is incorrect. DIR's construction of California's Labor Code is at least "entitled to consideration and respect[.]" *Murphy*, 40 Cal. 4th at 1105 n.7. Moreover, Plaintiff offers no alternative, more reasonable method for calculating his pay. As the Ninth Circuit has explained, when analyzing amount in controversy calculations, "if a defendant provide[s] no evidence or clearly inadequate evidence supporting its valuation for a claim, then it might be appropriate for a district court to assign that claim a $0 value . . . [but] merely preferring an alternative assumption is not an appropriate basis to zero-out a claim; at most, it only justifies reducing the claim to the amount resulting from the alternative assumption." *See Jauregui v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989, 994 (9th Cir. 2022). Thus, the Court finds that calculating Plaintiff's pay rate based on his last three months of commission wages is reasonable.

Plaintiff also argues that "[t]here is no factual basis, in the Puca Dec[laration] or any record evidence, for assuming [that] Plaintiff worked 40 hours per week, five days per week." (Reply at 11.) However, the Puca Declaration states that the "Account Manager position is a full-time position[,]" and that Stryker Employment assumes that a full-time employee "works at least 40 hours per week (five days per week)." (Puca Decl. ¶ 8.) That is sufficient at this stage. Accordingly, the Court finds Defendants' assumptions as to Plaintiff's days and hours worked are reasonable.

////

Finally, Plaintiff challenges Defendants' assumption he is entitled to the maximum penalty of 30 days' wages. (*See* Reply at 12.) However, Plaintiff specifically alleges that "Defendants did not pay Plaintiff and these proposed class members all wages due either immediately upon termination or within seventy-two hours of resignation, and failed to pay those sums for up to thirty days thereafter, in violation of California Labor Code sections 201–202." (Compl. ¶ 10.) The Puca Declaration also establishes that "Stryker Employment did not make any additional payments to Plaintiff between the last day of his employment and 30 days thereafter." (Puca Decl. ¶ 10.e.) Finally, Plaintiff was discharged around January 27, 2024 (*see id.* ¶ 8), but the Complaint was not filed until April 11, 2024, more than 30 days after the fact. Thus, Defendants have established by competent proof at this stage that Plaintiff is entitled to waiting time penalties for the 30-day maximum. *See Jauregui*, 28 F.4th at 994 (finding assumption that class members were entitled to full 30-days of waiting time penalties reasonable given that the members were terminated more than 30 days before the filing of the complaint).

Because Defendants' proposed method for calculating the waiting time penalties is reasonable, the Court will include $30,619.20 in waiting time penalties when totaling the amount in controversy.

**B.    The Wage Statement Penalties for Plaintiff's Second Cause of Action are Reasonable and Supported by the Record**

Labor Code section 226 requires employers to furnish accurate itemized wage statements. Here, Plaintiff alleges that, because Defendants retained a portion of his commission wages and thus did not pay him all wages owed, the "wage statements d[id] not reflect all gross and net wages owed account managers during the stated pay periods." (Compl. ¶ 21.) Pursuant to section 226(e)(1), a qualifying employee may recover a statutory penalty of $50 for "the initial pay period in which a violation occurs" and $100 "for each violation in a subsequent pay period." Plaintiff received 20 wage statements (corresponding to 20 pay periods) from April 11, 2023, through his

12

termination. (Puca Decl. ¶ 10.) Thus, Defendants calculated a $50 penalty for the first pay period and a $100 penalty for each subsequent pay period, totaling $1,950. (Opp'n at 14.)

Plaintiff argues that Defendants incorrectly assume a 100% violation rate for his wage statement claim because Defendants' assumption "that the alleged violations 'would have been present in every single wage statement' is unsupported by the evidence, and contrary to the Compl.'s allegations" as "Paragraph 37 of the Compl. states only that 'during the relevant time period,' Defendants failed to furnish wage statements containing the information required by section 226(a) . . . ." (Reply at 12.) Plaintiff argues that "Defendants offer no authority to refute the multiple decisions in the Eastern District concluding that 'at all relevant times' and 'during the relevant time period' do not refer to a violation rate or 'necessarily mean that a violation always occurred.'" (Reply at 12 (quoting *Castillo v. Trinity Servs. Grp., Inc.*, No. 1:19-cv-01013-DAD-EPG, 2020 WL 3819415, at *6 (E.D. Cal. July 8, 2020)).)

However, Plaintiff alleges that Defendants withheld first 1%, then $2,000 a month, from his commission wages, and that because of these deductions, his wage statements did not "reflect all gross and net wages owed . . . during the stated pay periods." (*Id.* ¶ 12–16, 21.) Thus, Plaintiff credibly alleges he received an inaccurate wage statement every time he was paid, supporting a 100% violation rate.[6] *See*

---

[6] Plaintiff also alleges that Defendants never "actually furnish the wage statements to its employees[ ]" because "Defendants do not provide wage statements in hard copy, or give its employees the option of obtaining their wage statements in hard copy[,]" but "only makes the wage statements available on-line." (Compl. ¶ 21.) Although employers may provide wage statements online and not violate California Labor Code section 226, that is only if the wage statements can be easily accessed and converted into hard copies, which Defendants do not do by failing to "give its employees the option of obtaining their wage statements in hard copy." (Compl. ¶ 21.) These allegations could also independently support a 100% violation rate. *Cf., e.g., Apodaca v. Costco Wholesale Corp.*, No. CV 12-5664 DSF (Ex), 2012 WL 12336225, at *2 (C.D. Cal. Oct. 29, 2012) (citing Opinion Letter from Robert A. Jones, Acting State Labor Commission and Chief Counsel, Division of Labor Standards Enforcement, to Colette Wolf (July 6, 2006) (available at https://www.dir.ca.gov/dlse/opinions/2006-07-06.pdf), *aff'd on other grounds*, 675 F. App'x 663 (9th Cir. 2017); *Patton v. Dollar Tree Stores, Inc.*, No. CV-15-03813-MWF (PJWx), 2017 WL 8233880, at *3 (C.D. Cal. June 15, 2017).

13

*Serrieh v. Jill Acquisition LLC*, 707 F. Supp. 3d 968, 978 (E.D. Cal. 2023) (collecting cases).

Thus, the Court will include $1,950 in wage statement penalties when totaling the amount in controversy.

### C. The Unreimbursed Business-Related Expenses for Plaintiff's Third Cause of Action are Reasonable and Supported by the Record

Finally, under Labor Code section 2802(a), "an employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer." However, Plaintiff alleges that Defendants never indemnified him or other account managers for their business-related expenses. (Compl. ¶ 12.) Rather, Plaintiff alleges that Defendants withheld first 1%, then $2,000 a month, from his commission wages, and reimbursed his claimed business expenses from those withheld wages, thereby making Plaintiff pay for his own expenses. (*See id.* ¶¶ 12–17.) However, as Plaintiff argues, section 2802 does not allow "Defendants to set up a system whereby employees, such as Plaintiff and the other similarly situated account managers, pay for their own expenses." (*Id.* ¶ 44.) Thus, Plaintiff seeks reimbursement for the business-related expenses he incurred, which Defendants calculate at $63,360.15 based on their records of all Plaintiff's claimed expenses. (Opp'n at 14.)

Plaintiff challenges this amount, arguing that Defendants' assumption he should recover on all of his claimed expenses is unreasonable because "the Compl. does not allege that, during the three-year limitations period applicable to [P]laintiff's reimbursement violations claim, Defendants never reimbursed plaintiff for any business expenses." (Reply at 13.) However, Plaintiff plainly alleges that, because Defendants reimbursed his business expenses out of improperly withheld portions of his commission wages, he "*never* received reimbursements for [his] work-related expenses" from Defendants. (Compl. ¶¶ 31, 42–47.) Therefore, the Complaint

14

supports Defendants' assumption that none of Plaintiff's business-related expenses were properly reimbursed.

Plaintiff also challenges "Defendants' assumption that the amount of his unreimbursed business-related expenses is $63,360.15 on the grounds [that] it is unsupported by any admissible proof." (Reply at 8, 13.) However, Defendants support this calculation with Exhibit A to the Puca Declaration, which details Plaintiff's claimed business expenses based on a search of Defendants' records. (*See* Puca Decl. ¶ 9 (explaining Mr. Puca's search of Defendants' records); Puca Decl., Ex. A (ECF No. 12-5) (spreadsheet detailing reimbursement requests).) As discussed in Section I *supra*, the Court may properly consider the factual material underlying Exhibit A, whose contents could be admitted at trial.

Thus, the Court will include $63,360.15 in unreimbursed business expenses when totaling the amount in controversy.

### D. The Challenge to the Attorney's Fees Calculation Are Moot

The amount in controversy is easily satisfied based on Plaintiff's first through third claims, which total $95,929.35.[7] As a result, the Court need not consider Defendants' attorney's fees calculations. *Cf., e.g.*, *Alvarez v. Off. Depot, Inc.*, No. CV 17-7220 PSG (AFMx), 2017 WL 5952181, at *4 (C.D. Cal. Nov. 30, 2017); *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.2 (9th Cir. 2015).

////
////
////
////
////
////
////

---

[7] ($30,619.20) + ($1,950) + ($63,360.15) = $95,929.35. (*See* Opp'n at 17.)

**CONCLUSION**

For the reasons set forth above, the Court finds the requirements for diversity jurisdiction are met as the Parties are diverse and the amount in controversy is over $75,000.  Accordingly, the Court DENIES Plaintiff's Motion to Remand.  (ECF No. 10.)

Defendants are ORDERED to file their answers or other responsive pleadings within twenty-one (21) days of this Order.

Dated:  February 3, 2025

THE HONORABLE DANIEL J. CALABRETTA
UNITED STATES DISTRICT JUDGE