SEYFARTH SHAW LLP
Michele J. Beilke (SBN 194098)
mbeilke@seyfarth.com
Julia Y. Trankiem (SBN 228666)
jtrankiem@seyfarth.com
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017-5793
Telephone:(213) 270-9600
Facsimile:  (213) 270-9601

SEYFARTH SHAW LLP
Jeffrey A. Nordlander (SBN 308929)
jnordlander@seyfarth.com
400 Capitol Mall, Suite 2300
Sacramento, California 95814
Telephone: (916) 448-0159
Facsimile: (916) 558-4839

Attorneys for Defendant
STRYKER EMPLOYMENT COMPANY, LLC

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN GRAHAM, on behalf of himself and all others similarly situated and as a representative for the State of California,<br><br>Plaintiff,<br><br>v.<br><br>STRYKER CORPORATION, STRYKER EMPLOYMENT COMPANY, LLC, STRYKER MEDICAL AND SURGICAL EQUIPMENT CORPORATION and Does 1 through 50, inclusive,<br><br>Defendants. | Case No. 2:24-cv-01411-DJC-JDP<br><br>Honorable District Judge Daniel J. Calabretta<br><br>**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION; AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY ADJUDICATION**<br><br>Date: July 9, 2026<br>Time: 1:30 p.m.<br>Ctrm: 7<br><br>***Filed Concurrently Herewith Response to Plaintiff's Statement Of Undisputed Facts, Objections To Plaintiff's Evidence, Response to Plaintiff's Objections, Declaration of Buczek*** |

REPLY ISO DEF.'S MOTION FOR SUMMARY JUDGMENT; AND OPPOSITION TO PL.'S CROSS MOTION
326586355v.2

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   ARGUMENT .......................................................................................................2

    A.    Plaintiff's First Cause Of Action For Unpaid Wages Fails. ......................2

        1.    Stryker Paid Plaintiff All Commissions Due Under The 2021 And 2022 Plans. ...................................................................................2

        2.    Stryker Paid Plaintiff All Commissions Due Under The 2023 Plan. ............5

        3.    Plaintiff's Labor Code Section 204 Theory Fails. ........................................7

        4.    Plaintiff's Claim for Untimely Payment of Wages at Termination Fails. ...............................................................................................8

            a.    Stryker Was Required To Pay Only Earned And Reasonably Calculable Commissions At Termination. ......................................8

            b.    Any Nonpayment Was Not Willful. ......................................................9

    B.    Plaintiff's Second Cause Of Action For Wage Statement Violations Fails. .........11

        1.    Plaintiff's Inaccuracy Theory Is Wholly Derivative. ...................................11

        2.    Stryker Furnished Compliant Wage Statements. .......................................12

        3.    Plaintiff Cannot Show A Knowing And Intentional Violation. .....................12

    C.    Plaintiff's Third Cause Of Action For Unreimbursed Expenses Fails. .................13

        1.    The Undisputed Record Shows Direct Reimbursement Of Expenses. ...............................................................................................13

        2.    Plaintiff Cannot Identify A Properly Submitted Expense That Stryker Failed To Pay. .........................................................................14

        3.    Plaintiff's Subjective Interpretation Of The Plans Does Not Create A Triable Issue. ...........................................................................14

        4.    The 2023 Plan Independently Satisfies Gattuso's Enhanced-Compensation Framework. .......................................................16

        5.    The Cross-Motion on § 2802 Should Be Denied. ......................................17

    D.    Plaintiff's Fourth Cause Of Action For Unauthorized Deduction Fails. ................17

    E.    Plaintiff's Fifth Cause Of Action For Unfair Competition Fails. ...........................18

    F.    Plaintiff's Sixth Cause Of Action Under PAGA Fails, and His Cross-Motion Should Be Denied. ...............................................................19

i

1.    The Derivative PAGA Theories Fall With The Underlying Claims. ........... 19

2.    The Standalone § 2751 Theory Fails. ...................................................... 19

III.    CONCLUSION...............................................................................................................20

326586355v.2

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Applied Materials, Inc. v. Demaray LLC*,
No. 5:20-cv-05676-EJD, 2020 WL 8515132 (N.D. Cal. Dec. 16, 2020) .............................. 10

*Burch v. Regents of Univ. of California*,
433 F. Supp. 2d 1110 (E.D. Cal. 2006) ........................................................................... 7

*Cleveland v. Groceryworks.com, LLC*,
200 F. Supp. 3d 924 (N.D. Cal. 2016) ............................................................................ 11

*Edwards v. Toys 'R' US*,
527 F. Supp. 2d 1197 (C.D. Cal. 2007) .......................................................................... 10

*Elliot v. Spherion Pacific Work, LLC*,
572 F. Supp. 2d 1169 (C.D. Cal. 2008), *aff'd,* 368 F. App'x 761 (9th Cir. 2010) ................. 19

*Hill v. Walmart Inc.*,
32 F.4th 811 (9th Cir. 2022) .......................................................................................... 9

*Lopez v. Smiths Detection, Inc.*,
No. 320CV01453RBMWVG, 2023 WL 2904756 (S.D. Cal. Mar. 16, 2023) ......................... 7

*Richter v. T-Mobile USA, Inc.*,
2021 WL 4864735 (C.D. Cal. Oct. 4, 2021) .................................................................... 11

*Rivera v. Ryder Integrated Logistics, Inc.*,
2022 WL 19569537 (C.D. Cal. Dec. 2, 2022) .................................................................. 9

*Ruiz v. XPO Last Mile, Inc.*,
No. 05CV2125-JLS (KSC), 2017 WL 11680450 (S.D. Cal. Feb. 21, 2017) .................. 13, 17

*Sillah v. Command International Security Services*,
154 F. Supp. 3d 891 (N.D. Cal. 2015) ........................................................................... 10

*Smith v. Cardinal Logistics Management Corp.*,
No. 07–2104 SC, 2009 WL 2588879 (N.D. Cal. Aug. 19, 2009) ....................................... 16

*U.S. Cellular Inv. Co. v. GTE Mobilnet, Inc.*,
281 F.3d 929 (9th Cir. 2002) ........................................................................................ 4

**State Cases**

*Amaral v. Cintas Corp. No. 2*,
163 Cal. App. 4th 1157 (2008) ...................................................................................... 11

REPLY ISO DEF.'S MOTION FOR SUMMARY JUDGMENT; AND OPPOSITION TO PL.'S CROSS MOTION
326586355v.2

*Brandwein v. Butler*,
    218 Cal. App. 4th 1485 (2013) ............................................................................................... 4

*Commeford v. Baker*,
    127 Cal. App. 2d 111 (1954) .................................................................................................. 5

*DeLeon v. Verizon Wireless, LLC*,
    207 Cal. App. 4th 800 (2012) .......................................................................................... 2, 6, 7

*Gattuso v. Harte-Hanks Shoppers, Inc.*,
    42 Cal. 4th 554 (2007) ............................................................................................... 15, 16, 17

*Ingels v. Westwood One Broadcasting Services, Inc.*,
    129 Cal. App. 4th 1050 (2005) ............................................................................................. 19

*Koehl v. Verio, Inc.*,
    142 Cal.App.4th 1313 (2006) ........................................................................................ 2, 7, 18

*Krantz v. BT Visual Images*,
    89 Cal. App. 4th 164 (2001) ................................................................................................. 19

*Marks v. Walter G. McCarty Corp.*,
    33 Cal. 2d 814 (1949) ........................................................................................................... 20

*Naranjo v. Spectrum Sec. Servs., Inc.*,
    88 Cal. App. 5th 937 (2023) ................................................................................................... 9

*Naranjo v. Spectrum Security Services, Inc.*,
    15 Cal.5th 1056,1087 (2024) ................................................................................................ 12

*Nein v. HostPro, Inc.*,
    174 Cal. App. 4th 833 (2009) .......................................................................................... 2, 6, 7

*Nordstrom Com. Cases*,
    186 Cal. App. 4th 576 (2010) ............................................................................................... 10

*Peabody v. Time Warner Cable, Inc.*,
    59 Cal. 4th 662 (2014) ............................................................................................................ 8

*Prachasaisoradej v. Ralphs Grocery Co.*,
    42 Cal. 4th 217 (2007) .......................................................................................................... 18

*Schachter v. Citigroup, Inc.*,
    47 Cal. 4th 610 (2009) ......................................................................................................... 6, 7

*Steinhebel v. L.A. Times Commc'ns, LLC*,
    126 Cal. App. 4th 696 (2005) ................................................................................................. 5

iv

326586355v.2

**State Statutes**

Cal. Civ. Code § 1633.7(d) .................................................................................................. 20

Cal. Civ. Code § 1641 .......................................................................................................... 4

Labor Code § 201 ................................................................................................................. 8

Labor Code § 201-203 ........................................................................................................ 18

Labor Code § 201(a) ............................................................................................................ 9

Labor Code § 203 ........................................................................................................... 9, 11

Labor Code § 204 ............................................................................................................. 7, 8

Labor Code § 221 ......................................................................................................... 17, 18

Labor Code § 226 ......................................................................................................... 12, 18

Labor Code § 226(e)(1) ...................................................................................................... 12

Labor Code § 2751 .................................................................................................. 2, 18, 19, 20

Labor Code § 2802 ....................................................................................................... *passim*

Uniform Electronic Transactions Act ................................................................................. 20

**Rules**

Rule 30(b)(6) .................................................................................................................. 8, 11

REPLY ISO DEF.'S MOTION FOR SUMMARY JUDGMENT; AND OPPOSITION TO PL.'S CROSS MOTION

326586355v.2

I.    INTRODUCTION

Plaintiff Jonathan Graham's ("Plaintiff") Opposition confirms that he has **no** evidence that Defendant Stryker Employment Company, LLC ("Stryker") failed to pay compensation due under the governing commission plans, failed to reimburse any properly submitted business expense, or failed to furnish written commission agreements sufficient under California law. The record is straightforward and mandates summary judgment in Stryker's favor and denial of Plaintiff's cross-motion:

- Plaintiff's compensation was governed by written annual commission agreements (the "Plans");

- In 2021 and 2022, Plaintiff was paid the salary called for by those Plans and commissions at the rates set forth in "Attachment A" to each Plan;

- In 2023, the Plan expressly provided that the calculation of his commission advance and potential commission earnings would be reduced by $2,000 each month to account for the Annual Expense Target, while separately requiring sales representatives to submit expenses through Concur for direct reimbursement;

- Plaintiff submitted all of his business expenses through Concur, and he is not aware of any expense over $25 that he incurred but did not submit, nor any expense under $25 that he failed to submit;

- Stryker reimbursed Plaintiff for **all** submitted expenses, with one exception—a 2021 meal submission rejected for lack of a proper receipt, which Plaintiff did not cure;

- Stryker's default wage statement delivery method is paper, and Plaintiff affirmatively elected direct deposit and could access and print his wage statements at any time at no charge; and

- Plaintiff's wage statements properly excluded expense reimbursements from taxable wages.

These concessions are **dispositive**. Commissions are contractual: what is not earned under the governing agreement is not a wage. Plaintiff identifies no contractual provision entitling him to the additional compensation he seeks—because none exists. Plaintiff's failure to identify a single unpaid wage or unreimbursed expense is independently fatal at summary judgment.

Unable to identify unpaid wages or unreimbursed expenses, Plaintiff instead asks the Court to rewrite the Plans' terms based on his own unsupported characterization that business expenses were paid from earned commissions. But summary judgment turns on the actual terms of the Plans and the undisputed record, not a party's characterization of the Plan terms.

1

Plaintiff's cross-motion fares no better. It rests on the same premise—that Stryker failed to reimburse business expenses. But the undisputed facts show the opposite: Stryker reimbursed for all properly submitted expenses, and Plaintiff cannot identify a single unreimbursed expense. Nor is summary adjudication warranted under section 2751, where the record reflects annual written compensation Plans, distribution, retained acknowledgment records, and Plaintiff's continued employment under those Plans. At a minimum, his cross-motion fails because he cannot carry his burden as a matter of law.

For these reasons, the Court should grant Stryker's motion for summary judgment and deny Plaintiff's cross-motion for summary adjudication.

## II.    ARGUMENT

### A.    Plaintiff's First Cause Of Action For Unpaid Wages Fails.

#### 1.    Stryker Paid Plaintiff All Commissions Due Under The 2021 And 2022 Plans.

California law is settled: commissions are contractual, and whether a commission is a recoverable wage depends on the parties' compensation agreement. *Koehl v. Verio, Inc.,* 142 Cal.App.4th 1313, 1331 (2006) ("cases have long recognized, and enforced, commission plans agreed to between employer and employee, applying fundamental contract principles to determine whether a salesperson has, or has not, earned a commission"); *Nein v. HostPro, Inc.*, 174 Cal. App. 4th 833, 853 (2009) ("for purposes of enforcing the provisions of the Labor Code, '[t]he right of a salesperson or any other person to a commission depends on the terms of the contract for compensation'"); *DeLeon v. Verizon Wireless, LLC*, 207 Cal. App. 4th 800, 808 (2012) ("Contractual terms must be met before an employee is entitled to commissions"). That rule resolves Plaintiff's wage theory here: his compensation was governed by written commission Plans, and Stryker paid him in full under those Plans. UMF 2–8, 16, 21–22.

In 2021 and 2022, Plaintiff was a New Hire / Emerging Market account manager. UMF 7. His Plans provided an annualized salary of $60,000 and commissions at the rates set forth in Attachment A. UMF 7–9. Plaintiff admits he received the salary called for by those Plans (UMF 9), and he testified that, for 2022, he was paid at the commission percentages in Attachment A. UMF 16. Plaintiff identifies **no** evidence that Stryker failed to pay any commission owed under

2

the 2021 or 2022 Plans. (*See generally* Dkt. 56.)

Plaintiff's response is **not** that Stryker failed to pay commissions at the rates stated in his Plans. Instead, he argues that Stryker should have paid him at different, higher commission rates—the "standard" rates applicable to Account Managers outside California and Illinois. But Plaintiff was a California Account Manager, and his Plans set his rates in Attachment A.

There is a straightforward reason for the differential: California and Illinois require employers to directly reimburse reasonable and necessary business expenses, while most other states do not.[1] The Plans reflect that distinction on their face. Account Managers in California and Illinois receive direct reimbursement and a slightly lower commission rate; Account Managers outside California and Illinois receive a higher "standard" rate and no direct reimbursement. The Plan says so explicitly: JSUF 10 states that Plaintiff's "applicable commission rates are set forth in Attachment A" and that those rates are ".5% lower than the standard commission rates applicable to employees who work outside of CA or IL **and are not eligible for direct reimbursement of their reasonable and necessary business expenses**." JSUF 10 (emphasis added). The Expense Management Bonus formula makes the same point: it compares "the amount the Account Manager **would have earned** in commissions at the standard commission rate" with "the Account Manager's commissions **earned** at the reduced rate plus submitted expenses." UMF 15. That is comparison language, not entitlement language.

Plaintiff's own evidence says the same thing. The March 21, 2023 email from Cameron Ludwig that Plaintiff cites compares the "commissions [Plaintiff] earned at the CA/IL rates" with what commissions "would have been" at the "baseline" (*i.e.,* "standard") rates. Dkt. 56-3 (Graham Decl.), Ex. G. That language does not promise Plaintiff the "standard" rates; rather, it confirms that he earned commissions at the CA/IL rates.

---

[1] Plaintiff cites no authority prohibiting Stryker from setting different commission rates by state or from accounting for anticipated expenses when setting those rates. Virtually all employers account for costs when making compensation decisions, and nothing in California law makes Stryker's approach unlawful merely because it benchmarked CA/IL rates against the "standard" rates Stryker pays elsewhere.

3

Plaintiff also points to the performance-to-quota ("PTQ") bonus.[2] He argues that because Stryker used "standard commission rates" to calculate the PTQ bonus, Stryker had to also pay **commissions** at those higher rates. (Dkt. 56 at 30:4–10.) Not so. PTQ was a bonus calculation, not a commission-rate provision. It did not set the rate at which Plaintiff earned commissions; Attachment A did. The 2021 Plan's exemplar PTQ calculation confirms that the "standard" rates are used only to calculate the PTQ bonus, not to redefine Plaintiff's commission rates:

**Example:**

An Account Manager's two bonus components and actual performance are as follows:

| Segment | Quota | Actual |
|---|---|---|
| Annual PC | $2,500,000 | $3,000,000 |
| Core Selling | 125 ProCuity Frames (LEX, Z, ZX, ZM, or ZMX) | 175 Total ProCuity Frames (combination of LEX, Z, ZX, ZM, ZMX) |

In this scenario, if the rep earned $210,000 in commissions under CA/IL commission rates but would have earned $240,000 under standard rates, the bonus would be 8% of $240,000 or $19,200. In addition, the Account Manager

Plf.'s Depo. 131:10–18, 141:21–143:23, Ex. A-7, SYK 279. At most, using the "standard" rates increased the PTQ bonus available to eligible Account Managers—but it applied only to the bonus calculation; it did not convert those rates into Plaintiff's contractual commission rates.

"[T]he fundamental goal of contract interpretation is to give effect to the mutual intent of the parties as it existed at the time of contracting." *U.S. Cellular Inv. Co. v. GTE Mobilnet, Inc.,* 281 F.3d 929, 934 (9th Cir. 2002). Plaintiff cites **no** language in the 2021 or 2022 Plans transforming the comparator "standard" rates into his contractual rates. None exists. In effect, Plaintiff asks the Court to build a hybrid commission structure that exists in **no** Plan—taking the "standard" rate from the PTQ provision, the direct-reimbursement entitlement from the expense provision, and discarding the trade-off the Plans struck. Contracts are not read that way. Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part"); *Brandwein v. Butler,* 218 Cal. App. 4th 1485, 1507 (2013) ("[W]hen interpreting a contract, [courts] strive to interpret the parties' agreement to give effect to all of a contract's terms, and to

---

[2] Account Managers in Acute Care are assigned an annual sales quota—for example, $1 million in total sales. If the Account Manager's aggregate sales meet or exceed quota, the Account Manager is eligible for a PTQ bonus. Plf.'s Depo., Ex. A-7, SYK 279. The bonus is calculated as a percentage of commissions. *Id.* In paying the bonus, Stryker uses the commissions the Account Manager would have earned at the standard rates, equalizing bonuses between CA/IL Account Managers and their counterparts in other states. *Id.*

REPLY ISO DEF.'S MOTION FOR SUMMARY JUDGMENT; AND OPPOSITION TO PL.'S CROSS MOTION
326586355v.2

avoid interpretations that render any portion superfluous, void or inexplicable").

### 2.    Stryker Paid Plaintiff All Commissions Due Under The 2023 Plan.

The same principles compel the same result under the 2023 Plan: Stryker paid all commissions owed, and Plaintiff's claim for unpaid wages fails as a matter of law.

The 2023 Plan provides, in plain terms, that "[t]he calculation of your advance on Commission and the calculation of your potential Commission earnings will be reduced by $2,000 each month (for a total of $24,000 per year) to take into account the sales representatives' Annual Expense Target assigned by Stryker." UMF 31–32. Two features of that language defeat Plaintiff's theory.

*First*, the $2,000 is part of the formula that defines what Plaintiff could advance against and what he could ultimately earn. It is not subtracted from anything Stryker promised to pay. The Plan does not say Stryker will pay Plaintiff a commission and then claw back $2,000; it says the commission calculation itself "will be reduced by $2,000." UMF 31–32. The reduction operates *ex ante*, at the formula stage, before any wage exists. Plaintiff's labels—"withheld," "deducted," "CA/IL Expense Withholding"—do not change the contractual mechanic. *Commeford v. Baker,* 127 Cal. App. 2d 111, 117 (1954) ("the right of a salesman or any other person to commissions under given circumstances depends upon the terms of his contract for compensation").

*Second*, the Plan operates on "advance[s] on Commission" and "potential Commission earnings"—neither of which is a wage. The Plan, and Plaintiff's own testimony, confirm that commissions are earned only upon a "Completed Purchase." UMF 26, 28–29, 43; Graham Dep. 39:5–12 ("commission is earned when the conclusion of the purchase is made, the product is delivered, and the customer has paid their bill"). Commission advances paid before that point are not wages. *Steinhebel v. L.A. Times Commc'ns, LLC,* 126 Cal. App. 4th 696, 709 (2005) (advances "are to be encouraged, since they provide present income even though subject to adjustment once initial sales have been reconciled with commissionable sales"). Reducing the **calculation** of an advance—an amount that is itself not a wage—cannot, as a matter of law, reduce a wage.

5

Amounts Stryker never promised to pay are **not** wages under California law. *Schachter v. Citigroup, Inc.*, 47 Cal. 4th 610, 620-21 (2009) ("The only thing that has not been 'paid' is something Schachter never 'earned'"); *Nein v. HostPro, Inc.*, 174 Cal. App. 4th 833, 853 (2009) ("for purposes of enforcing the provisions of the Labor Code, '[t]he right of a salesperson or any other person to a commission depends on the terms of the contract for compensation'"); *DeLeon v. Verizon Wireless, LLC*, 207 Cal. App. 4th 800, 808 (2012) ("Contractual terms must be met before an employee is entitled to commissions"). Where the contract defines when and how commissions are earned, an employee cannot recast the formula as a "deduction" from something supposedly earned earlier. (*Id.*)

Plaintiff attempts to distinguish this authority on the ground that many cases arise in the chargeback context. (Dkt. 56 at 31:12-33:13.) This supposed distinction is irrelevant, because these cases still establish the governing rule on which Stryker relies—amounts are not wages unless the commission agreement makes them so. *DeLeon* illustrates the point. There, the compensation plan conditioned commissions on customer retention and permitted chargebacks regardless of whether subsequent events were within the salesperson's control. 207 Cal. App. 4th at 809 ("As specifically described in the compensation plans, DeLeon received advances and his commissions were earned at the expiration of the chargeback period"). The court enforced those terms because commissions were earned only when the contractual conditions were satisfied. *Id.* ("Although the parties dispute whether the retail sales representatives did, or did not, have further responsibilities after the sale, this is immaterial because DeLeon's commissions depended upon the conditions set forth in the compensation plans"). The same principle controls here. Under the 2023 Plan, earned commissions are net of the $2,000 adjustment. UMF 31-32 (specifically, "The calculation of your advance on Commission and the calculation of your potential Commission earnings will be reduced by $2,000 each month"). Plaintiff cannot rewrite that formula.

Plaintiff offers no contrary computation, no contrary contract language, and no contrary authority. He simply asserts that the $2,000 figure was "his" money. (Graham Decl. ¶ 6 ("As explained in the prior paragraph, there is no question that I, and the other California and Illinois

6

account managers, were entitled to the amount of the reduction in our compensation"). But that assertion is not evidence, and a party's characterization of a contract cannot create a triable issue of fact. *Burch v. Regents of Univ. of California*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006) (at summary judgment "statements in declarations based on speculation or improper legal conclusions, or argumentative statements, are not facts and likewise will not be considered").

Because the 2023 Plan never promised Plaintiff the $2,000 as compensation, he was not entitled to it as a matter of law. *Schachter*, 47 Cal. 4th at 620-21; *Nein*, 174 Cal. App. 4th at 853; *DeLeon*, 207 Cal. App. 4th at 808. Plaintiff's quarrel is with California law, not Stryker's compliance with it. And to the extent Plaintiff suggests Stryker funded his expense reimbursements out of commissions, the record does not support that framing. Stryker reimbursed Plaintiff's expenses independently of any commission calculation, in amounts exceeding his $24,000 Annual Expense Target.[3]

Finally, Plaintiff's own testimony confirms the absence of any unpaid earned commissions. He testified that he could not identify any earned commission that went unpaid, and could not identify any specific amount allegedly owed. UMF 47-48. That testimony is incompatible with a claim for unpaid wages.

### 3.    Plaintiff's Labor Code Section 204 Theory Fails.

Plaintiff does not address, and therefore concedes, Stryker's argument that § 204 provides no private right of action.[4] That alone warrants dismissal of any standalone § 204 claim.

Even on the merits, this claim fails. Section 204 governs the timing of the payment of **wages**, not commission advances. *Lopez v. Smiths Detection, Inc.*, No. 320CV01453RBMWVG, 2023 WL 2904756, at *10 (S.D. Cal. Mar. 16, 2023) ("wages are only payable when 'earned'"); *Koehl*, 142 Cal. App. 4th at 1335, (1st Dist. 2006) (quoting DLSE Opn. Letter No. 1999.01.09, p.2) (a commission is "earned" only "when the employee has perfected the right to payment; that is, when all of the legal conditions precedent have been met").

---

[3] Stryker addresses Plaintiff's expense-reimbursement framing in full in Section II.C below.
[4] Plaintiff states that Section 204 may be pursued through PAGA, but Plaintiff's pleaded PAGA claim does not identify Section 204 as a predicate violation. Compl. ¶ 61 (listing predicates for PAGA claim).

7

Here, Plaintiff cannot show that Stryker paid earned wages late. The Plans provide for order and shipment commission advances before commissions are earned. UMF 27–30, 43. Plaintiff himself testified that a "commission is earned when the conclusion of the purchase is made, the product is delivered, and the customer has paid their bill." UMF 43; Graham Dep. 39:5–12. The 2023 Plan says the same thing: although Stryker advances commissions on valid orders, those commissions are earned only upon a "Completed Purchase" (that is, when the customer pays).[5] UMF 27–29. So even if the SAP transition caused delays or reconciliation issues in 2023, those issues do not establish late payment of earned wages under § 204. UMF 45. That conclusion is reinforced by the undisputed fact that Stryker issued $10,000 commission advances to address any timing issues. UMF 44-45.

Plaintiff offers **no** evidence that Stryker ever paid an earned commission late. Without such evidence, his § 204 theory fails as a matter of law.

### 4. Plaintiff's Claim for Untimely Payment of Wages at Termination Fails.

#### a. Stryker Was Required To Pay Only Earned And Reasonably Calculable Commissions At Termination.

Labor Code section 201 requires payment of wages due at separation, but commissions are payable only when they have been earned and are reasonably calculable under the governing agreement. *Peabody v. Time Warner Cable, Inc.,* 59 Cal. 4th 662, 668 (2014) ("Commissions are owed only when they have been earned"). The Plans draw that distinction. Each Plan provides that although Stryker advances order and shipment commissions on a valid order, an account manager earns those commissions only after the order becomes a "Completed Purchase" (that is, when the customer pays). UMF 27-29 ("A Completed Purchase occurs when the products have been ordered by, delivered to, accepted and paid for by the customer, and any adjustment/credit (including rebates) has been reconciled from the Valid

---

[5] Plaintiff attempts to seize on a line from Stryker's Rule 30(b)(6) deposition, where John Buczek testified that "the earned commission number… has nothing to do with the actual timing of the shipments and orders, which just impacts when the commissions are paid." Pl's Resp. to UMFs 26, 27. That testimony does not say commissions are earned at the time of sale. (*Id.*) Mr. Buczek is testifying (accurately) that placement of the order and delivery of the order to the customer does **not** result in the commission being earned; commissions are "earned" upon payment by the customer, and the order becoming a "Completed Purchase."

Order amount").

Plaintiff admits that understanding. (Plf's Depo. 39:5-12 ("Q. So what is your understanding of when a commission is earned at Stryker? A. So commission is earned when the conclusion of the purchase is made, the product is delivered and the customer has paid their bill"). He also admits that, as of January 5, 2024, he could not identify any specific amount of earned commissions allegedly owed. UMF 48. Stryker's records confirm the same: Plaintiff's last recorded commission involved an order for which the customer did not pay until March 19, 2024—well after his separation and after Stryker had already paid the relevant advance. UMF 75. *See Rivera v. Ryder Integrated Logistics, Inc.*, 2022 WL 19569537, at *13 (C.D. Cal. Dec. 2, 2022) (granting summary judgment on derivative waiting time penalty claim because underlying unpaid wage claim failed).

To prevail on a final-pay claim, Plaintiff must identify earned and reasonably calculable commissions due at separation that were not paid. Lab. Code § 201(a) ("If an employer discharges an employee, the wages **earned** and **unpaid at the time of discharge** are due and payable immediately"). On this record, he cannot.

### b.    Any Nonpayment Was Not Willful.

Even if Plaintiff could identify additional commissions he believes should have been paid at separation, his claim still fails for an independent reason: lack of willfulness. Section 203 requires willfulness. A good-faith dispute defeats willfulness if the employer presents an objectively reasonable defense, whether grounded in fact or law, that, if accepted, would preclude liability. The defense need not ultimately prevail. *Naranjo v. Spectrum Sec. Servs., Inc.,* 88 Cal. App. 5th 937, 947 (2023). "[T]he operative question is simply whether, based on the state of the law when [the alleged violations occurred], [the defendant] has presented an objectively reasonable defense that is not marred by bad-faith conduct." *Hill v. Walmart Inc.*, 32 F.4th 811, 815 (9th Cir. 2022).

That standard is met here several times over. First, Stryker had an objectively reasonable basis to conclude that no additional commissions were earned or reasonably calculable at separation. The Plans made customer payment a condition of earning; Plaintiff testified to that

9

understanding; and Stryker's records showed that at least the most recent commission was not earned until after separation because customer payment did not occur until March 19, 2024. UMF 27-29, 48.

Second, Stryker had a good-faith basis for its compensation and expense-reimbursement structure under the Plans. *See Nordstrom Com. Cases*, 186 Cal. App. 4th 576, 584–87 (2010) (finding a good faith dispute where nonpayment was based on the terms of an employment agreement).

Third, Stryker independently had reason to believe Plaintiff had already been paid more than any amounts due at separation. A review of SAP records revealed that Plaintiff received duplicative advances on a fourth-quarter 2023 sale—payments far exceeding the commission authorized by the Plan.[6] UMF 76-77. Plaintiff received duplicative 100% order and shipment advances at a 7% rate on the sale of 37 S3 PX2 hospital beds, even though the 2023 Plan provided for a 5% commission with 50/50 order and shipment advances. UMF 76–77. As a result, Plaintiff received approximately $47,008.50 on that transaction, although the Plan-supported commission was approximately $16,778.75. UMF 76–77.

Plaintiff's response is speculation. He suggests the sale was "incentivized" and that he was entitled to nearly three times the contracted commission ($16,778.75 due under the Plans, compared to $47,008.50). (Graham Decl. ¶¶ 19-20.) But Stryker separately paid the applicable incentive, which does not account for the discrepancy. (Reply Buczek Decl. ¶¶ 4-11, Exs. L, M.)[7]

---

[6] Plaintiff asserts that because the Court denied Stryker's motion for leave to amend to assert an offset affirmative defense, Stryker is precluded from relying on the overpayment at all in this case. Not so. Proving unpaid wages is an element of Plaintiff's case-in-chief, both for his unpaid wage claim and his untimely payment of wages at termination claim. *Sillah v. Command International Security Services*, 154 F. Supp. 3d 891, 910 (N.D. Cal. 2015) (an employee bringing a claim "for unpaid . . . wages . . . has the burden of proving that he performed work for which he was not properly compensated"), quoting *Anderson v. Mt. Clemens Pottery*, 328 U.S. 680, 686–87 (1946). Because Stryker overpaid Plaintiff's wages during his employment, he necessarily did not have unpaid wages at termination.

[7] Stryker may properly address factual claims raised in Plaintiff's Opposition. *Applied Materials, Inc. v. Demaray LLC*, No. 5:20-cv-05676-EJD, 2020 WL 8515132, at *1 (N.D. Cal. Dec. 16, 2020) ("[E]vidence submitted with a reply brief is not new evidence when it is submitted to rebut arguments raised in the opposition brief"); *Edwards v. Toys 'R' US*, 527 F. Supp. 2d 1197, 1205 n.31 (C.D. Cal. 2007) ("Evidence is not 'new,' however, if it is submitted in direct response to proof adduced in opposition to a motion").

10

Plaintiff also references a supposed separate contract, but he never sought that contract in discovery[8] and offers no evidence supporting entitlement to an additional $30,219.75.

That record is fatal to willfulness. Section 203 penalties require willful nonpayment, and an employer's objectively reasonable, good-faith belief that no wages are owed defeats willfulness as a matter of law. *Amaral v. Cintas Corp. No. 2,* 163 Cal. App. 4th 1157, 1201, (2008) ("The settled meaning of 'willful,' as used in section 203, is that an employer has intentionally failed or refused to perform an act which was required to be done"); *Cleveland v. Groceryworks.com, LLC*, 200 F. Supp. 3d 924, 959-60 (N.D. Cal. 2016) (granting summary judgment on a Section 203 claim because the plaintiff did not cite "any evidence that would support an inference that any failure to timely pay final wages was not due to mistake or based on an otherwise reasonable, good faith belief that [plaintiff] was not owed these wages").

**B.    Plaintiff's Second Cause Of Action For Wage Statement Violations Fails.**

**1.    Plaintiff's Inaccuracy Theory Is Wholly Derivative.**

Plaintiff alleges his wage statements were inaccurate because they did not reflect all wages supposedly owed. That theory rises or falls with his underlying claim that Stryker failed to pay compensation due under the governing Plans. It adds nothing independent.

Because Plaintiff cannot show unpaid earned commissions, he likewise cannot show that the wage statements were inaccurate on that basis. *Richter v. T-Mobile USA, Inc.*, 2021 WL 4864735, at *8 (C.D. Cal. Oct. 4, 2021) (granting summary judgment to employer on wage statement claim that is "entirely derivative of [plaintiff's] other wage-and-hour claims" that failed).

Plaintiff's fallback argument fares no better. The wage statements reflected expense reimbursements under the "Concur Expense" pay code. UMF 68–69. His disagreement is not with what the wage statements show, but with his broader legal theory that Stryker's

---

[8] Stryker questioned Plaintiff regarding the overpayment during his deposition on July 2, 2025. On October 13, 2025, Mr. Buczek submitted a declaration in support of Stryker's Motion for Leave to Amend explaining the factual basis for Stryker's assertion that Plaintiff was overpaid. (Dkt. 36-3.) On January 26, 2026, Plaintiff took Stryker's Rule 30(b)(6) deposition, where Stryker designated Mr. Buczek as its person most knowledgeable, and asked **no** questions regarding the overpayment. Plaintiff had every opportunity to develop a record on this point. He did not.

reimbursement structure was unlawful.[9] That is not a section 226 violation.

### 2.    Stryker Furnished Compliant Wage Statements.

Plaintiff next argues that Stryker failed to "furnish" wage statements because he received them electronically rather than in paper form. The record forecloses that argument.[10] The Handbook provides that employees are mailed paper paychecks "unless the employee has signed up for and authorized direct deposit." UMF 62. Plaintiff signed up for and authorized direct deposit, accessed his wage statements electronically during employment, admitted a print function was available, and could print his wage statements at no cost to himself. UMF 56 (Plaintiff was reimbursed for home office expenses), 64-67. That is furnishing—and it is approved by DLSE Opinion Letter 2006.07.06.

### 3.    Plaintiff Cannot Show A Knowing And Intentional Violation.

Even if Plaintiff could identify some technical defect, he still cannot recover penalties. Section 226(e)(1) requires a "knowing and intentional" violation, and an objectively reasonable, good-faith belief in compliance defeats that element. *Naranjo v. Spectrum Security Services, Inc.,* 15 Cal.5th 1056,1087 (2024) ("if an employer reasonably and in good faith believed it was providing a complete and accurate wage statement in compliance with the requirements of section 226, then it has not knowingly and intentionally failed to comply with the wage statement law").

Stryker had that belief here. It reasonably concluded that it paid Plaintiff in accordance with the Plans, properly reflected expense reimbursements as "Concur Expense," and lawfully furnished statements electronically after Plaintiff elected direct deposit. UMF 31, 62, 64-69. Plaintiff offers no evidence of a knowing or intentional wage statement violation. Summary judgment should therefore be entered for Stryker on the second cause of action.

---

[9] The statements did not need to separately itemize the .5% differential or the 2023 $2,000 reduction, because those were not deductions from earned wages; they were part of the compensation formulas set out in the Plans. UMF 10, 15, 31. Section 226 requires accurate reporting of **wages** earned and paid, not every internal component of the commission calculation—and Plaintiff cites no authority for this argument.

[10] Even without the Katie Grau declaration, the record independently establishes compliance: the paper-default policy appears in the Handbook Plaintiff authenticated, and the remaining facts are drawn from Plaintiff's own testimony. UMF 62, 64-67.

12

### C.        Plaintiff's Third Cause Of Action For Unreimbursed Expenses Fails.

Plaintiff opposes summary judgment on this claim and cross-moves for adjudication. Neither position has merit.

### 1.        The Undisputed Record Shows Direct Reimbursement Of Expenses.

Stryker's policies and the Plans consistently provide for reimbursement of reasonable and necessary business expenses. UMF 13-14, 39-40. The 2021 and 2022 Plans state that Stryker "will reimburse eligible employees for all reasonable and necessary business expenses." UMF 13. The Handbook likewise provides that California employees are entitled to reimbursement for business expenses incurred as a direct consequence of performing work duties. UMF 14. And the 2023 Plan states the same: Stryker "will reimburse eligible employees in California and Illinois for all reasonable and necessary expenses directly incurred as a result of your job duties." UMF 39. This language tracks Section 2802.

The record shows that Stryker followed those policies. Plaintiff testified that he submitted his business expenses through Stryker's Concur system and cannot identify any expense he incurred that he failed to submit for reimbursement. UMF 51, JSUF 41-42, 54-55, 56. Stryker paid those expenses, and the payments appear under the "Concur Expense" pay code on his wage statements. UMF 68.

Plaintiff's admissions are dispositive. He testified that he submitted expenses over $25 with receipts and also sought reimbursement for smaller expenses. JSUF 52-53. He cannot identify any expense—large or small—that he incurred but failed to submit. JSUF 54–55. And Plaintiff's wage statements show Stryker reimbursed him for business expenses for $5,640.92 in 2021, $27,772.47 in 2022, and $28,209.69 in 2023. UMF 57-59.

Plaintiff's framing relies heavily on labels—"reduction," "withholding," "deduction," "CA/IL Expense Withholding." But § 2802 looks past labels to substance. The question is not what an entry on a commission report is called; it is whether the employer reimbursed the employee for reasonable and necessary business expenses incurred in the course of work. *Ruiz v. XPO Last Mile, Inc.,* No. 05CV2125-JLS (KSC), 2017 WL 11680450, at *5 (S.D. Cal. Feb. 21, 2017) (the "semantics of labeling" matters only insofar as employees and regulators can "differentiate

13

between wages and expenses for purposes of monitoring statutory and contractual compliance"). Here, the answer is plain. Stryker reimbursed Plaintiff's submitted expenses through Concur and reported those reimbursements separately on his wage statements under the "Concur Expense" pay code. UMF 42–59, 68. Plaintiff could see exactly what he was paid for labor and what he was paid as reimbursement. That is all § 2802 requires

### 2. Plaintiff Cannot Identify A Properly Submitted Expense That Stryker Failed To Pay.

That failure of proof is fatal to Plaintiff's claim. A section 2802 claim requires evidence that the employer failed to reimburse reasonable and necessary expenses incurred in the course of employment. Plaintiff identifies none. Instead, he concedes he submitted his expenses through Concur and cannot identify any expense that was not submitted for reimbursement. That ends the claim.

Plaintiff testified that one meal reimbursement in 2021 was rejected because he submitted the wrong receipt (the credit-card slip instead of the itemized receipt), and he never submitted the proper receipt afterward. UMF 60–61. Plaintiff does not recall any other denied reimbursement request. UMF 60. That testimony confirms the opposite of a violation: Stryker reimbursed properly submitted expenses, and Plaintiff identifies no expense that went unpaid.

The same is true at separation. Plaintiff submitted a final expense reimbursement request upon separation. JSUF 72. He testified that he ultimately received payment for that request and believed he had been paid for all expenses he submitted at the time of separation. UMF 73-74. That testimony independently defeats any section 2802 claim tied to the end of employment.

### 3. Plaintiff's Subjective Interpretation Of The Plans Does Not Create A Triable Issue.

Despite these undisputed facts, Plaintiff argues that Stryker created a policy "whereby Mr. Graham paid for his work-related business expenses from his own commissions." (Dkt. 56 at 28:3-4.) He points to three features of the Plans: (1) the "reduced" commission rates in 2021 and 2022; (2) the use of "standard" commission rates to calculate the PTQ bonus; and (3) the $2,000 adjustment in the 2023 Plan. (Dkt. 56 at 22:14-19, 28:12-29:12.) None supports his argument.

As Plaintiff acknowledges, the "reduced" rates in the 2021 and 2022 Plans describe "the

14

percentage spread between the commission rate applicable to California and Illinois account managers and the standard commission rate applicable to account managers working in the other 48 states." (Dkt. 56 at 28:12-18.) That admission defeats his theory—he was not entitled to commission rates that did not apply to him.

The PTQ bonus fares no better. Calculating the bonus using "standard" commission rates increased bonuses for eligible account managers; it did not convert those rates into Plaintiff's contractual commission rates. Plf's Depo., 131:10-18, 141:21-143:23, Ex. A-7, SYK 279.

The $2,000 adjustment in 2023 also does not support Plaintiff's theory. That adjustment applies before commissions are earned and is part of the formula used to determine compensation. UMF 31-32. It does not reflect wages earned and then reduced.

In short, the Plans define what constitutes wages, and none of the amounts Plaintiff identifies qualify. Plaintiff's interpretation cannot create a triable issue.

Nor do the facts support his narrative. The record shows (1) Stryker's policies and the Plans provide for reimbursement of reasonable and necessary business expenses, UMF 13–14, 39–40; (2) Stryker reimbursed Plaintiff directly for submitted expenses, reflected under the "Concur Expense" pay code, UMF 42–59; and (3) Stryker paid Plaintiff all compensation owed under the Plans.

Boiled down, Plaintiff's argument is that Stryker was required both to reimburse his business expenses **and** to pay him the same commission rates applicable in states where employees are not eligible for direct reimbursement. Stryker agrees with Plaintiff that it was required to (and did) reimburse Plaintiff for business expenses, either through direct reimbursement or enhanced compensation under *Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal. 4th 554 (2007). But Plaintiff cites no authority that requires Stryker to also pay equivalent commission rates to California and Illinois Account Managers and Account Managers living and working in other states. No such authority exists, and Stryker is entitled to summary judgment on the section 2802 claim.

15

### 4.     The 2023 Plan Independently Satisfies *Gattuso*'s Enhanced-Compensation Framework.

Stryker complied with § 2802 through direct reimbursement under all three Plans. The 2023 Plan also independently satisfies the California Supreme Court's enhanced-compensation framework under *Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal. 4th 554 (2007).

Plaintiff raises three arguments about *Gattuso*, none persuasive. First, he says Stryker cannot rely on *Gattuso* because it has consistently maintained direct reimbursement. There is no inconsistency. Stryker complied through direct reimbursement under the 2021 and 2022 Plans and, under the 2023 Plan, through both direct reimbursement and enhanced compensation. Stryker has relied on *Gattuso* throughout this case. (Dkt. 21, March 3, 2025 Joint Status Report at 4:11-16; Dkt. 34, June 23, 2025 Reply iso Mot. Bifurcate.) Plaintiff cites no authority forbidding alternative compliance theories.

Second, Plaintiff relies on *Smith v. Cardinal Logistics Management Corp.*, No. 07–2104 SC, 2009 WL 2588879 (N.D. Cal. Aug. 19, 2009). There, the court declined to treat the employer's practice of deducting an "estimate of . . . likely expenses" from payments to delivery drivers that did not include "a means of identifying the amount being paid for labor performed and the amount being paid as reimbursement for business expenses" as compliant under *Gattuso*. *Id.* at *3 ("The Court will not treat [this structure] as equivalent to the lump-sum payment method endorsed by the California Supreme Court in Gattuso"). *Smith* is inapposite. Here, by contrast, Stryker complied with *Gattuso*; it directly reimbursed Plaintiff for **all** properly submitted expenses, separately identified those reimbursements on wage statements, and increased his 2023 commission rates to match the "standard" out-of-state rates.

To the extent *Smith* suggests an "up-front, lump-sum payment" requirement, that gloss is not grounded in *Gattuso*. Courts applying *Gattuso* have recognized that the relevant inquiry is whether employees and regulators can distinguish between wages and expense reimbursement—not the label attached to the payment structure:

> The Smith Court largely focused on the distinction between the terms "reimbursement" and "deduction," noting that the defendant's argument asked

16

"the Court to treat these deductions as functionally equivalent to reimbursements." … However, the semantics of labeling aggregate changes to an employee's weekly pay as either reimbursements or deductions only matters insofar as it affects the crux of the enhanced compensation inquiry, which is meant to provide employees and officials with the ability to differentiate between wages and expenses for purposes of monitoring statutory and contractual compliance. *Id.*

*Ruiz*, 2017 WL 11680450, at *5.

Third, Plaintiff asserts that he was taxed on Concur reimbursements. Dkt. 56 at 31:3-11 ("Mr. Graham's wage statements reflect that his monthly business expenses, identified as "Concur Expense[s]," were added to his commission earnings to arrive at the total amount of "earnings" that would be taxed"). That claim fails on the record. Stryker demonstrated—and Plaintiff does not meaningfully dispute—that expense reimbursements were excluded from taxable wages. UMF 69. Plaintiff offers no contrary analysis. Dkt. 31:3-11.

In short, the *Gattuso* requirements are satisfied: (1) Stryker **increased** Plaintiff's 2023 commission rates to align with the "standard" rates earned by Account Managers outside of California and Illinois; (2) Stryker identified the portion of compensation attributable to expenses; and (3) the amounts paid were sufficient to reimburse Plaintiff for all expenses. UMF 22-24, 69. Even on Plaintiff's theory, Stryker complied with Section 2802.

### 5. The Cross-Motion on § 2802 Should Be Denied.

Plaintiff's cross-motion fails for the same reasons and should be denied for the same reason. He bears the burden, but the record shows: direct reimbursement through Concur, expense payments reflected on wage statements, no identified unsubmitted expenses, a single uncured documentation defect, and payment of final expenses at separation. That record forecloses summary adjudication in Plaintiff's favor, even if the Court declines to grant Stryker summary judgment.

### D. Plaintiff's Fourth Cause Of Action For Unauthorized Deduction Fails.

Plaintiff's Section 221 claim fails because he cannot show that Stryker recovered "wages theretofore paid." His theory rests on labels – "reduced," "withheld," and "CA/IL Expense Withholding." But labels do **<u>not</u>** control. The question is whether Stryker took back compensation

17

it had already promised. It did not.

When compensation is commission-based, the plan defines what the employee is entitled to earn. *Koehl,* 142 Cal. App. 4th at 1329 ("the right of a salesperson or any other person to a commission depends on the terms of the contract for compensation"). And *S*ection 221 is not violated where compensation is calculated under the plan before wages are finally determined. *Prachasaisoradej v. Ralphs Grocery Co.*, 42 Cal. 4th 217, 229 (2007).

That is what occurred here. The 2021 and 2022 Plans set Plaintiff's commission rates ".5% lower than the standard commission rate applicable to employees who work outside of CA or IL and are not eligible for direct reimbursement of their reasonable and necessary business expenses." UMF 10. The Expense Management Bonus formula compares what an Account Manager "would have earned" at the "standard" commission rate against "the Account Manager's commissions earned at the reduced rate plus submitted expenses." UMF 15. These provisions define the compensation formula; they do not deduct wages already paid. Plaintiff was paid exactly what the Plans provide. UMF 8, 10, 15-16.

The 2023 theory fails for the same reason. The Plan provides that commission calculations "will be reduced by $2,000 each month." UMF 31. It also states that advances are not earned compensation and that commissions are earned only upon a "Completed Purchase." UMF 26, 28-29.

Even accepting Plaintiff's terminology, he cannot show that Stryker clawed back earned wages. The Plan defined the amount in the first instance. That ends the Section 221 claim. Plaintiff cannot convert Plan-defined compensation into "wages theretofore paid" by pointing to labels like the word "withholding" on a dashboard or the word "reduced" in a plan. Section 221 does not permit rewriting the Plans after the fact. Because Plaintiff identifies no compensation Stryker promised and later took back, the fourth cause of action fails as a matter of law.

**E.     Plaintiff's Fifth Cause Of Action For Unfair Competition Fails.**

Plaintiff's UCL claim is entirely derivative of the same Labor Code theories addressed above. He alleges "unlawful" conduct based on purported violations of Labor Code sections 201–203, 221, 226, 2751, and 2802. (Compl. ¶¶ 53–59.) Because those underlying claims fail

18

for the reasons already discussed, the UCL claim fails with them.[11] *See Ingels v. Westwood One Broadcasting Services, Inc.*, 129 Cal. App. 4th 1050, 1060 (2005) ("If the [underlying] claim is dismissed, then there is no unlawful act upon which to base the derivative Unfair Competition claim"); *Krantz v. BT Visual Images*, 89 Cal. App. 4th 164, 178 (2001) (viability of UCL claim "stands or falls" with the underlying claim). Plaintiff identifies no separate unfair or fraudulent conduct. The UCL provides no independent basis for relief.

### F.    Plaintiff's Sixth Cause Of Action Under PAGA Fails, and His Cross-Motion Should Be Denied.

#### 1.    The Derivative PAGA Theories Fall With The Underlying Claims.

As pled, Plaintiff's PAGA claim is derivative of Plaintiff's claims for unpaid wages, waiting-time penalties, wage statements, expense reimbursement, and unlawful deductions. (Compl. ¶ 61.) Because those predicate theories fail for the reasons already discussed, the derivative PAGA claim fails with them. *Elliot v. Spherion Pacific Work, LLC,* 572 F. Supp. 2d 1169, 1182 (C.D. Cal. 2008) ("Because all of Plaintiff's other claims fail as a matter of law, so does her PAGA claim"), *aff'd,* 368 F. App'x 761 (9th Cir. 2010).

#### 2.    The Standalone § 2751 Theory Fails.

Plaintiff's only stand-alone PAGA theory is section 2751. That theory fails on this record and cannot support Plaintiff's cross-motion.

Stryker's evidence shows that Plaintiff's compensation was governed by written annual Plans, that Stryker distributed those Plans electronically through Callidus and later SAP Commissions, and that Stryker maintained records of distribution and acknowledgment. UMF 3–6. Those records are specific to Plaintiff and reflect Plan distributions and acceptance entries for 2021, 2022, and 2023. Ex. D to Buczek Decl.

Plaintiff's position is internally inconsistent. On the one hand, he claims the Plans are not enforceable because they were not properly "furnished" or executed under section 2751. On the other, he seeks to recover commissions under those same Plans. He cannot have it both ways. Either the Plans govern his compensation—as the record shows he understood and accepted—

---

[11] To the extent Plaintiff contends his cross-motion on sections 2802 and 2751 establishes derivative UCL liability, that contention fails for the same reasons those predicate theories fail.

19

or they do not. Plaintiff's claim depends on treating the Plans as binding when it suits him and disregarding them when it does not. The law does not permit that result.

Plaintiff's remaining arguments are formalistic; he points to blank signature lines and argues that the Plans reference "Stryker" or "Stryker Medical," rather than the full legal name "Stryker Employment Company, LLC." But Section 2751 does not require a wet-ink corporate signature in a dedicated signature block. California law recognizes that a signature may be printed, stamped, or typewritten if placed on the document with the intent to authenticate it. *Marks v. Walter G. McCarty Corp.*, 33 Cal. 2d 814, 820 (1949). The Uniform Electronic Transactions Act likewise provides that, "[i]f a law requires a signature, an electronic signature satisfies the law." Cal. Civ. Code § 1633.7(d).

The record reflects that intent. Buczek declares: "Stryker affixes its name to the Compensation Plans with the intent and understanding that it is obligated to pay commissions in accordance with the Compensation Plans." Buczek Decl. ¶ 6. He also explains that Stryker distributed the Plans through Callidus and later SAP Commissions, where Account Managers could review the Plans and approve them through the system; although there was "no E signature," Stryker treated that credentialed approval process as evidence of employee approval. *Id.* ¶¶ 4–6. Plaintiff then worked under those Plans and was paid pursuant to them.

At minimum, Plaintiff cannot show that the undisputed facts establish a violation as a matter of law. The better reading of the record is that Stryker complied: there were written commission agreements, electronic distribution, retained acknowledgment records, and evidence that Stryker intended to be bound by the Plans it used to pay commissions. UMF 3–6; Buczek Decl. ¶¶ 4–6.

Because Plaintiff cannot establish a violation of section 2751, his standalone PAGA theory fails, and his cross-motion should be denied.

## III.    CONCLUSION

Plaintiff's claims fail on the record and the law. Because he cannot establish any predicate Labor Code violation, his derivative UCL and PAGA claims fail as well. His cross-motion rests on the same flawed premises and should be denied.

DATED: June 23, 2026

Respectfully submitted,

SEYFARTH SHAW LLP

By: _____/s/ Jeffrey A. Nordlander_____
Michele J. Beilke
Julia Y. Trankiem
Jeffrey A. Nordlander
Attorneys for Defendant
STRYKER EMPLOYMENT COMPANY,
LLC

21

REPLY ISO DEF.'S MOTION FOR SUMMARY JUDGMENT; AND OPPOSITION TO PL.'S CROSS MOTION
326586355v.2